IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES STOKES )
 )
 v. ) NO. 3:10-0023
 )
DAN HASKINS, JR., et al. )


TO: Honorable Aleta A. Trauger, District Judge


**R E P O R T   A N D   R E C O M M E N D A T I O N**

By Order entered January 7, 2010 (Docket Entry No. 10), the Court referred this action to the Magistrate Judge for management of the case, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure, and the Local Rules of Court.

Presently pending before the Court is the Defendants' motion for summary judgment (Docket Entry No. 42), to which the Plaintiff has not filed a response.[1] For the reasons set out below, the Court recommends that the motion be granted and that this action be dismissed.


**I. PROCEDURAL BACKGROUND**

Plaintiff is a former inmate of the Tennessee Department of Correction ("TDOC") who filed this action pro se and in forma pauperis on December 1, 2009, while incarcerated at the Charles Bass

---

[1] By Order entered August 9, 2010 (Docket Entry No. 45), the Court notified the Plaintiff of the motion, the need to respond, and gave the Plaintiff until September 13, 2010, to file a response.

Correctional Complex ("CBCX") in Nashville, Tennessee.[2] The Plaintiff alleges that his civil rights were violated at the CBCX in the Fall of 2009 and brings claims against six TDOC employees - Chaplain Dan Haskins, Jr., Warden Dwight Barbee, Captain Roderick Scott, Deputy Warden Charles Simmons, Grievance Chairperson Daniel Cox, and Sgt. Linda Moore - under 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. He seeks damages and injunctive relief. The Plaintiff asserts that his First Amendment, Equal Protection, and Due Process rights were violated when he was hindered from practicing his Muslim religion during Ramadan. He also alludes to a violation of the Religious Land Use and Institutionalized Person Act ("RLUIPA"), 42 U.S.C. §§ 2000cc et seq. See Complaint (Docket Entry No. 1), at 15.

Defendants Haskins, Barbee, Moore, Scott, and Simmons answered the complaint, see Docket Entry No. 36, and a scheduling order (Docket Entry No. 39) was entered in the action. Process for Defendant Cox was returned unexecuted, see Docket Entry No. 23, and the Plaintiff has not requested that service be re-attempted on Defendant Cox and had not provided an alternative address for Defendant Cox. Because Defendant Cox has not been served with process within 120 days of the order directing that process issue and the Plaintiff has not shown good cause for the failure to serve Defendant Cox, Rule 4(m) of the Federal Rules of Civil Procedure requires his dismissal from this action.

---

[2] On December 7, 2009, the Plaintiff filed a letter indicating that his address had changed to the West Tennessee State Prison ("WTSP") in Henning, Tennessee. See Docket Entry No. 4. However, court mail recently sent to the Plaintiff at the WTSP was returned as undeliverable, see Docket Entry Nos. 51-54, and it appears that the Plaintiff has been released from the TDOC. Although the Plaintiff has not filed a new change of address notice, the certificate of service on the Defendants' motion for summary judgment lists 3073 Givens Ave., Memphis, TN 38112 as the address for the Plaintiff. See Docket Entry No. 42, at 2.

There are no motions pending before the Court other than the Defendants' motion for summary judgment.

## II. FACTUAL BACKGROUND[3]

On August 20, 2009, the Plaintiff notified prison officials that he was changing his religion to Islam and that he wanted to be on the list of inmates approved to participate in the Islamic observance of Ramadan, which was to begin on August 21, 2009, and end on September 21, 2009. See Attachment No. 4 to Motion for Summary Judgment (Docket Entry No. 43-2, at 13). Accordingly, his name was on a list issued by Defendant Haskins on August 26, 2009, of 18 inmates at the CBCX Annex who were approved for participation in Ramadan activities. See Attachment to Complaint (Docket Entry No. 1-1), at 7.

On September 6, 2009, Defendant Scott searched the Plaintiff's cell and written materials believed to be associated with gang activity were found. The Plaintiff was then transferred from the CBCX Annex to the CBCX Main Compound and was subsequently charged on September 8, 2009, with the offense of possession of security threat group materials. See Attachment No. 4 to Motion for Summary Judgment (Docket Entry No. 43-2), at 16-19 and 24-26. On September 15, 2009, he pled guilty to the Class A disciplinary offense and received as punishment 10 days of punitive segregation suspended for sixty days, a 12 month package restriction, termination from the Annex, and a $5.00 fee. Id. at 21-22.

---

[3] The facts are summarized from the allegations of the Plaintiff's complaint and the undisputed facts asserted by the Defendants in support of their motion. All facts have been viewed in the light most favorable to the Plaintiff.

On September 16, 2009, Defendant Haskins issued a written directive that the Plaintiff, because of his disciplinary conviction, was not allowed to participate in group Ramadan activities and was restricted to worshiping and taking his Ramadan meals in his cell. See Attachment to Complaint (Docket Entry No. 1-1), at 10. This directive was applied to two other inmates the next day. Id. at 11. The directives issued by Defendant Haskins remained in effect until they were lifted on September 20, 2009, and the Plaintiff was permitted to resume attending the group Ramadan activities without restriction.

The Plaintiff submitted two prison grievances about the restriction imposed by Defendant Haskins and about not receiving either an evening meal on September 16, 2009, or a morning meal on September 17, 2009. Id. at 2-3, 5-6, and 12-14. None of the grievances were heard on the merits because prison officials asserted each grievance had technical flaws. Id. at 1, 4, and 12.

The Plaintiff contends that the restrictions imposed upon him from September 16-19, 2009, prevented him from freely practicing his religion and were not penologically justified. He further contends that Defendant Haskins' actions were a form of discrimination against Islamic inmates, that the other prison officials failed to correct the situation, and that the Defendants infringed upon his protected liberty interest in participating in religious activities without due process.

## III. MOTION FOR SUMMARY JUDGMENT

Four of the defendants raise defenses personal to them. Defendants Barbee, Simmons, and Scott argue that there is insufficient evidence of their personal involvement in the alleged wrongdoings to support a finding that they are liable under 42 U.S.C. § 1983 for any of the asserted constitutional violations. Defendant Moore argues that she should be dismissed because the

4

allegations against her fail to state a claim upon which relief can be granted because the only allegation against her is that she failed to properly process a prison grievance.

Additionally, the Defendants all argue that they are entitled to qualified immunity and that the Plaintiff's allegations do not show that his ability to practice his religion was substantially burdened and, thus, no violation of the RLUIPA occurred.

In support of their motion, the Defendants rely upon excerpts from the Plaintiff's deposition (Docket Entry No. 43-1) and upon the affidavit of Defendant Haskins and related attachments (Docket Entry No. 43-2).

## IV. STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Rule 56(c)(2). To prevail, the moving party must meet the burden of proving the absence of a genuine issue of material fact as to an essential element of the opposing party's claim. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Logan v. Denny's, Inc., 259 F.3d 558, 566 (6th Cir. 2001).

In determining whether the moving party has met his or her burden, the Court must view the factual evidence and draw all reasonable inferences in the light most favorable to the nonmoving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); McLean v. 988011 Ontario, Ltd., 224 F.3d 797, 800 (6th Cir. 2000). "The court's function is not to weigh the evidence and determine the truth of the matters asserted, 'but to

5

determine whether there is a genuine issue for trial.'" Little Caesar Enters., Inc. v. OPPCO, LLC, 219 F.3d 547, 551 (6th Cir. 2000) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

If the nonmoving party fails to make a sufficient showing on an essential element of the case with respect to which he has the burden, however, the moving party is entitled to summary judgment as a matter of law. See Williams v. Ford Motor Co., 187 F.3d 533, 537-38 (6th Cir. 1999). To preclude summary judgment, the nonmoving party "must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." Chao v. Hall Holding Co., Inc., 285 F.3d 415, 424 (6th Cir. 2002). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Shah v. Racetrac Petroleum Co., 338 F.3d 557, 566 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252). If the evidence offered by the nonmoving party is "merely colorable," or "not significantly probative," or not enough to lead a fair-minded jury to find for the nonmoving party, the motion for summary judgment should be granted. Anderson, 477 U.S. at 249-52. "A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." Hill v. White, 190 F.3d 427, 430 (6th Cir. 1999) (citing Anderson, 477 U.S. at 247-49).

## V. CONCLUSIONS

A. Injunctive Relief

In his complaint, the Plaintiff requests injunctive relief in addition to damages. See Complaint, at 21-22. However, because the Plaintiff is no longer incarcerated within the TDOC at

6

the CBCX, there is no merit in his request for injunctive relief to prevent future harm similar to that alleged in his complaint. The Plaintiff's past exposure to alleged illegal conduct "does not in itself show a present case or controversy regarding injunctive relief." O'Shea v. Littleton, 414 U.S. 488, 495, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974). Further, he has not shown that there is a real and immediate threat that he will suffer a future injury due to the alleged wrongdoing. Thus, he has no standing to seek prospective injunctive relief. See City of Los Angeles v. Lyons, 461 U.S. 95, 102-09, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983); Blakely v. United States, 276 F.3d 853, 873-74 (6th Cir. 2002); Williams v. Ellington, 936 F.2d 881, 889 (6th Cir. 1991).

B. Claim under the RLUIPA

Monetary damages are not available under the RLUIPA. See Cardinal v. Metrish, 564 F.3d 794, 801 (6th Cir. 2009). Because the Plaintiff no longer has a basis for injunctive relief, his claim under the RLUIPA warrants summary judgment in favor of the Defendants. See Colvin v. Caruso, 605 F.3d 282, 289 (6th Cir. 2010).

C. Claims Under 42 U.S.C. §§ 1985 and 1986

The Plaintiff's claims under 42 U.S.C. §§ 1985 and 1986 lack any factual support. The Plaintiff fails to offer any evidentiary support establishing a class-based conspiracy which is a necessary prerequisite to sustaining liability under Section 1985(3).[4] See Haverstick Enter., Inc. v. Financial Fed. Credit, Inc., 32 F.3d 989, 994 (6th Cir. 1994). The Section 1986 claim lacks an arguable basis in law since that statute contains no substantive provisions and was enacted only to

---

[4] The Court presumes that the Plaintiff's reference to a claim under Section 1985 is to subsection (c).

enforce Section 1985. See 42 U.S.C. § 1986; Amadasu v. The Christ Hosp., 514 F.3d 504, 507 (6th Cir. 2008); Radvansky v. City of Olmsted Falls, 395 F.3d 291, 314 (6th Cir. 2005).

D. Official Capacity Claims

The Plaintiff has sued each of the defendants in their official capacities in addition to their individual capacities. It is well established that the Eleventh Amendment bars a plaintiff from suing a state, a state agency, or any of its employees in their official capacities for monetary damages under 42 U.S.C. § 1983. Turker v. Ohio Dept. of Rehabilitation and Corrections, 157 F.3d 453, 456 (6th Cir. 1998). Neither a state nor its officials acting in their official capacities are "persons" under Section 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 109 S.Ct. 2304, 2311-12, 105 L.Ed.2d 45 (1989); Hardin v. Straub, 954 F.2d 1193, 1198 (6th Cir. 1992). Accordingly, summary judgment should be granted to Defendants on the claims brought against them in their official capacities.

E. Defendant Moore

The only factual allegation made by the Plaintiff against Defendant Linda Moore is that she failed to properly process his prison grievances. See Plaintiff's Deposition (Docket Entry No. 43-1), at 6-7. Such an allegation fails to support a constitutional claim against Defendant Moore. A prison inmate does not have a protected interest in prison grievance procedures. See Walker v. Michigan Dep't of Corrections, 128 Fed. Appx. 441 (6th Cir. Apr. 1, 2005); Miller v. Haines, 156 F.3d 1231, 1998 WL 476247 (6th Cir. Aug. 3, 1998) (Table Decision); Spencer v. Moore, 638 F. Supp. 315 (E.D. Mo. 1986); Azeez v. DeRobertis, 568 F. Supp. 8 (N.D. Ill. 1982). Accordingly, allegations

that a prison official failed to process a grievance in accordance with institutional policy cannot support a constitutional claim. See Black v. Parke, 4 F.3rd 442, 448 (6th Cir. 1993).[5]

F. Defendants Barbee, Simmons, and Scott

A defendant cannot be held liable under Section 1983 absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct. Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992). Because constitutional liability requires a showing of the personal involvement of the defendant in the alleged unconstitutional activity, a defendant cannot be found liable under the theory of respondeat superior or merely because he is in a supervisory position. Shehee v. Luttrell, 199 F.3d 295, 300 (6th Cir. 1999), cert. denied, 530 U.S. 1264, 120 S.Ct. 2724, 147 L.Ed.2d 988 (2000); Hays v. Jefferson County, 668 F.2d 869, 872 (6th Cir. 1982).

The Plaintiff bases his claims against Defendants Barbee, Simmons, and Scott upon their respective roles as supervisory officials. See Plaintiff's Deposition (Docket Entry No. 43-1), at 8-9. Such claims lack merit and warrant summary judgment in favor of the Defendants. The Defendants cannot be found liable under Section 1983 merely because of their supervisory duties.

The Plaintiff does make one specific allegation against Defendant Scott. He alleges that Defendant Scott failed to ensure that he received a morning meal on September 17, 2009. However, this allegation, even if true, alleges only de minimis conduct which fails to support a constitutional claim. See Mabon v. Campbell, 2000 WL 145177 (6th Cir. Feb. 1, 2000) (prisoner's complaint of

---

[5] Defendant Cox's only alleged involvement in the action is that he also failed to properly process one of the Plaintiff's grievances. See Complaint, at 16-17. Accordingly, had Defendant Cox been served with process in the action, the claim against him would also warrant dismissal.

a delay in having breakfast served for five days during Ramadan does not rise to a constitutional violation).

G. Constitutional Claims

The Defendants assert that they are entitled to qualified immunity from any damage claims asserted by the Plaintiff. As set out supra, the claims against Defendants Barbee, Simmons, Scott, Moore, and Cox all warrant dismissal irrespective of the defense of qualified immunity, leaving only the claims of Defendant Haskins for qualified immunity analysis.

The affirmative defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known. See Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Gardenhire v. Schubert, 205 F.3d 303, 310-11 (6th Cir. 2000). The purpose of the qualified immunity inquiry is to "acknowledge that reasonable mistakes can be made as to the legal constraints" on particular conduct, and the doctrine protects "all but the plainly incompetent or those who knowingly violate the law." Dorsey v. Barber, 517 F.3d 389, 394 (6th Cir. 2008) (internal citations omitted).

The qualified immunity analysis involves two inquiries. The first prong involves determining whether a constitutional violation has occurred. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); Sigley v. City of Parma Heights, 437 F.3d 527, 537 (6th Cir. 2006); Jackson v. Leighton, 168 F.3d 903, 909 (6th Cir. 1999). If the Court finds that no violation has occurred, then the case must be dismissed. Saucier, 533 U.S. at 201. If the Court finds that the

facts presented to the Court sufficiently show that a constitutional violation has occurred, the Court must then determine whether the constitutional right was clearly established at the time of the incident in question such that a reasonable officer in the defendant's position would have known that his conduct violated that right.[6] See Saucier, 533 U.S. at 201; Champion v. Outlook Nashville, Inc., 380 F.3d 893, 900-01 (6th Cir. 2004); Feathers v. Aey, 319 F.3d 843, 848 (6th Cir. 2003); Burchett v. Kiefer, 310 F.3d 937, 942-43 (6th Cir. 2002); Risbridger v. Connelly, 275 F.3d 565, 569 (6th Cir. 2002). When a defendant raises a defense of qualified immunity, the plaintiff bears the burden of demonstrating that the defendant is not entitled to qualified immunity. Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006).

The Court finds that Defendant Haskins has met his initial burden of raising the defense of qualified immunity by showing that he was acting within his discretionary authority as the CBCX chaplain in determining the manner in which inmates at the CBCX were permitted to participate in Ramadan activities. While prison inmates do not lose their right to exercise their religion by virtue of incarceration, Turner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 2259, 96 L.Ed.2d 64 (1987), "the circumstances of prison life may require some restriction on prisoners' exercise of their religious beliefs." Walker v. Mintzes, 771 F.2d 920, 929 (6th Cir. 1985). The First Amendment does not require that prison officials provide inmates with the best possible means of exercising their religious beliefs nor does it require that general prison policies and concerns become subordinate to the religious desires of any particular inmate, and the internal administration of a correctional facility is a function legitimately left to the discretion of prison administrators. See Bell v. Wolfish, 441

---

[6] In Pearson v. Callahan, 555 U.S. __, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the United States Supreme Court clarified that rigid application of the two step qualified immunity analysis, which had been made mandatory in Saucier, was no longer the rule.

11

U.S. 520, 547, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Procunier v. Martinez, 416 U.S. 396, 405, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989).[7]

Because Defendant Haskins met his initial burden, the burden shifts to the Plaintiff to establish that Defendant Haskin's conduct violated a constitutional right and that the right was so clearly established that any official in the defendant's positions would have clearly understood that he was under an affirmative duty to refrain from such conduct. See Chappell v. City of Cleveland, 585 901, 907 (6th Cir. 2009); Barrett v. Steubenville City Schs., 388 F.3d 967, 970 (6th Cir. 2004); Rich v. City of Mayfield Heights, 955 F.2d 1092, 1095 (6th Cir. 1992). The Plaintiff has not responded to the motion for summary judgment and has not satisfied his burden of showing that Defendant Haskins is not entitled to the defense of qualified immunity. For this reason, summary judgment is warranted in favor of Defendant Haskins.

# RECOMMENDATION

Based on the foregoing, the Court respectfully RECOMMENDS that:

---

[7] The Plaintiff also refers to equal protection and due process claims in his complaint. The Defendants have not addressed these claims in their motion. However, there is no plausible legal basis for such claims based on the facts alleged by the Plaintiff and summary judgment is warranted in favor of the Defendants on these claims.
    The Plaintiff's allegations of an equal protection violation are completely conclusory, and he has not set forth any evidence showing that he was the victim of any type of invidious discrimination in violation of the Fourteenth Amendment. Similarly, he has not alleged that he suffered an infringement that was an "atypical, significant deprivation" in relation to the ordinary incidents of prison life, which is necessary to trigger procedural due process protections. See Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995).

1) Defendant Daniel Cox be DISMISSED from this action pursuant to Rule 4(m) of the Federal Rules of Civil Procedure;

2) the Motion for Summary Judgment (Docket Entry No. 42) of Defendants Dan Haskins, Jr., Dwight Barbee, Roderick Scott, Charles Simmons, and Lisa Moore be GRANTED and that all claims against these Defendants be DISMISSED WITH PREJUDICE; and

3) this action be DISMISSED in its entirety.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of receipt of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

The Clerk is directed to mail a copy of this Report and Recommendation to the Plaintiff at 3073 Givens Ave., Memphis, TN 38112, by regular first class mail and by certified mail.

Respectfully submitted,

JULIET GRIFFIN
United States Magistrate Judge